### In re FEDERAL WATER & GAS CORPORATION et al.
### Civ. A. No. 1142.

United States District Court
D. Delaware.
Dec. 2, 1949.

Myron S. Isaacs, Richard S. Ries, Walter Glass and Roger Foster, of Washington, D. C., for Securities and Exchange Commission.

Allan S. Hubbard (of Hughes, Hubbard & Ewing), of New York, N. Y., for Federal Water & Gas Corporation.

Charles A. Horsky, Wilbur R. Lester and Spencer Gordon (of Covington, Burling, Rublee, Acheson & Shorb), of Washington, D. C., for Chenery Corporation and others.

Percival E. Jackson, of New York, N. Y., representing himself and other stockholders of Federal Water & Gas Corporation.

LEAHY, Chief Judge.

This court, pursuant to a § 11 proceeding under the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k, approved by order and without opinion, the "dissolution and partial distribution plan" of Federal Water and Gas Corporation as fair and equitable and appropriate to effectuate the provisions of § 11. Part 3 of the plan to which objections had been taken by the Chenery Group (hereinafter referred to as "Chenery") were reserved for later consideration and these are now ready for decision. The Chenery litigation has had a long history, both before the Securities and Exchange Commission and the courts.[1]

The question for decision, then, is whether Part 3 of the plan is fair and equitable in its treatment of certain officers, directors and controlling stockholders of Federal, notwithstanding they do not share pari passu with other shareholders. This because their preferred stock was purchased on over-the-counter markets during periods when successive reorganization plans proposed by Chenery were before the SEC. Under the fourth reorganization plan this preferred stock was to be converted into common stock of the new and resultant corporation via merger. On the basis of the purchases of preferred stock already referred to, Chenery would have received a substantial percentage of the new common stock. It is conceded that Chenery's purpose in buying preferred stock was to protect its interest in the new company and to make a profit; and that there was no fraud or lack of disclosure in making the purchases.

As stated above the SEC refused to approve the fourth plan when submitted because the preferred stock purchased by Chenery was to be treated on a par with the other preferred stock, and it concluded that the officers and directors of a holding company in the process of reorganization under the Act were fiduciaries and were under a duty not to trade in the securities of that company during the reorganization period. 8 S.E.C. 893, 915-921. An amendment to the plan was had which provided that the preferred stock acquired by Chenery, unlike that held by others, was not to be transmuted into new common stock but was, on the contrary, to be surrendered at cost, plus all dividends accumulated since the purchase dates. This latter plan was approved by the SEC over Chenery's objection. The basis of these objections are now here for disposition. The issue, viz., is it fair and equitable to deny Chenery equal treatment and to pay the group only $313,190.00, I believe was raised in the merger phase of the case which was passed on by the Supreme Court in two cases.

1. In the first case, S. E. C. v. Chenery Corp., 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626, the Court reversed the SEC with a remand. The Court held that the SEC's

---

1. The detailed history is found in Holding Company Act Release No. 5584.

denial of equal participation to Chenery's preferred could not be sustained on the grounds upon which the Commission acted. On remand, the SEC changed its rationale but reached the same result.

2. In the second Chenery case, 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995, the Supreme Court found that the SEC's later order had avoided the fatal error which was the basis of its first Chenery action. But what was the precise holding in the second Chenery case is the dispute in the matter at bar. The way this dispute is resolved will largely solve the present question for decision. The objectors argue the SEC's order which formed the basis of the second Chenery case did not pass or decide the particular case but stated a rule or standard or policy of the Commission. And such policy is that transactions in securities during a reorganization by officers and directors under the Public Utility Holding Company Act are interdicted. That being the SEC's decision, the objectors strongly argue that is the Commission action which the Supreme Court affirmed. In short, the objectors say the precise holding of the Supreme Court in the second Chenery case is that the Commission had the power to adopt this new principle, standard or policy as to corporate officials. More than that, the objectors argue the Commission in practice has never adhered to this policy but has adopted a policy of deciding each reorganization case on the merits; that the Commission has never examined the factual record in the present case; and, if it did, there would be no substantial evidence to support the action of the Commission in excluding Chenery from equal participation with other security holders of the same class. The Commission and opponents to Chenery urge the negative of the objectors' arguments. In short, they urge that the precise matter now before me —whether the Chenery group should participate equally with the other preferred— was decided by the Supreme Court in the second Chenery case adversely to the objectors. Consequently the matter is res judicata or, at least, the law of the case.

I think the second Chenery case, especially as interpreted by the Supreme Court itself in Securities and Exchange Commission v. Central-Illinois Securities Corporation, 338 U.S. 96, 69 S.Ct. 1337, compels me to the single conclusion that I am required to approve this plan as fair and equitable as it relates to Chenery. The language of Mr. Justice Rutledge in "Engineers" reads that the Court approved [2] without qualification the order of the SEC in the second Chenery case. I am unable to accept the argument of Chenery that the Supreme Court in the second Chenery case merely approved the right of the Commission to enunciate a particular rule or policy, and did not approve or disapprove the application of the policy to the particular case. Regardless of whether the language of the Court in the Engineers case, as to its interpretation regarding the holding of the Chenery case, is dictum, I think, at least as a matter of general semantics, the language indicates that the Court thought it had approved the action of the Commission in the Chenery case without any qualification at all. This is the apparent meaning of the language used by the Court. The arguments of Chenery that the language used has a different meaning fail to persuade me and consequently I hold that the issue raised here has already been concluded against Chenery by the Supreme Court.

For the reasons just detailed, the recent decision of the Supreme Court in Manu-

---

2. "Administrative determinations of policy, often based upon undisputed basic facts, in an area in which Congress has given the agency authority to develop rules based upon its expert knowledge and experience, are exemplified by Securities and Exchange Commission v. Chenery Corporation, supra, in which the Commission determined that preferred stock purchased by management in the over-the-counter market during the formulation of a holding company reorganization plan could not be exchanged for common stock participation in the reorganized company, as could other preferred stock; instead management was to be paid cost plus interest for the preferred stock so purchased." S. E. C. v. Central-Illinois Securities Corp., et al., 338 U.S. 96, 127, 69 S.Ct. 1377, 1393.

facturers Trust Co. v. Becker, 1949, 70 S.Ct. 127, does not compel a different conclusion. There is language in the opinion indicating that in the absence of a definite rule or policy by a regulatory body, a case of this nature must be determined on its particular facts. While as I view the matter there is much in the Becker case to support Chenery's contentions, still the ratio behind my present memorandum is that I interpret the language of the Court in the Engineers case, when it refers to the second Chenery decision, as specifically and unqualifiedly approving the action of the Commission as applied to the facts of the Chenery case itself.

3. The Commission's opinion in the Chenery case seems clearly to indicate that the circumstances of each case are not controlling but that all transactions in securities during reorganization by officers and directors, are prohibited. One reason for such conclusion—a reason reiterated several times by the SEC—is that the consequences of this conflict may be so serious and its measurement so subjective that the mere existence of the conflict is sufficient; and the only relevant fact is that of security transactions during a pending reorganization; no other facts that opinion seems to state will be considered.

The contention of Chenery, which has great force, is that the SEC never did follow its declared policy and that consequently there never was such a rule or policy of the Commission—which as the Supreme Court in the first Chenery case said there must be. For example, Chenery successfully shows that the policy of the Commission—to prohibit and penalize purchases of stock by officers and directors during reorganization—was only an avowed policy in that it was never followed by the Commission, except in the instant case; and if such policy ever existed it was clearly abandoned by the Commission six months prior to the time it entered the order now on review in the instant case.

In the American States case (In the Matter of American States Utilities Corp., Holding Company Act Release No. 7721, Oct. 3, 1947) and in the Middle West case (In the Matter of the Middle West Corp., Holding Company Act Release No. 7905, December 9, 1947), the SEC did not limit the owners of stock purchased during pendency of reorganization notwithstanding the new stock carried voting rights and obviously was purchased for profit. In short, although both power and profit were present, the Commission did not apply the Chenery "policy". These cases take the final step of looking at consequences rather than measuring degrees of potential damages and affirmatively find no actual harm. I conclude from these cases, and all the available data, that the Commission never did have a policy of penalizing purchases of stock during reorganization regardless of the facts of the particular case.

If the facts and consequences of a particular case determine whether a penalty should be inflicted, I think it clear that the plan could not be approved as fair and equitable. This case is by far the strongest on the facts against the imposition of the penalty. The detrimental factors present in this case—purchases of stock with a valid intention of profit and voting power—were not only present in each of the cited cases where such purchases were not condemned but several favorable factors present here were absent in the other two cases. After the Engineers case, there is left a small area of reexamination for the § 11 district enforcement court to probe for a "clear" error of law on the part of the Commission. Especially here, since there was no concern whether substantial evidence supports the SEC's findings—the facts, admittedly, do not disclose either fraud or double dealing on Chenery's part in its purchases of the questioned securities. The SEC in its arguments was shy in retreating to the formalistic defense of res judicata. But that, in my interpretation of the second Chenery case, is precisely what the Supreme Court apparently wrote.[3] I trust this cause in its appellate flight will some place along the line have articulated for the present objectors and

---

3. Cf. citation of Mr. Justice Rutledge's language in n. 2, supra.

the legal literature at large the nuances which have become attached to this particular litigation, in contradistinction to the specificity of decision in comparable or, at least, related matters before the administrative body.

Consequently, if I did not think I were foreclosed by the Supreme Court, as detailed above, I would have no hesitation in holding there is no substantial evidence to support the Commission's finding that Chenery should be penalized and limited to cost plus interest for its preferred stock purchases.

However, under the circumstances, an order approving the plan as fair and equitable may be submitted; but any proposed findings should not be inconsistent with what has already been stated.